IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Case No. 95–cv–01578-MSK-BNB

RONALD ANTHONY VASHONE CARUSO,

      Plaintiff,

v.

CARLTON  ZENON, Warden of the Arkansas Valley Correctional Facility,
KATHERINE SANGUINETTI, Chief of Community Resources, Colorado Department of
Corrections,
DONA ZAVISLAN, Food Services and Laundry Program Manager, Colorado Department of
Corrections, and
A.J. TRUJILLO, Volunteer Coordinator, Arkansas Valley Correctional Facility, all in their official
capacity,

      Defendants.

_____

## OPINION AND ORDER DENYING, IN PART, MOTIONS TO ALTER JUDGMENT
_____

**THIS MATTER** comes before the Court pursuant to the Plaintiff's Motion to Alter

Judgment and Motion for Extension of Time to File Motion for Attorney's Fees and Costs[1]

**(# 297)**, the Defendants' response **(# 304)**, and the Plaintiff's reply **(# 309)**; the Defendants'

Motion to Alter Judgment **(# 298)**, and the Plaintiff's response **(# 299)**; and the Plaintiff's

Unopposed Motion to Submit a Supplemental Declaration **(# 310)** in Support of his Motion to

Alter Judgment.

_____

[1]The Court discourages parties from combining substantive and procedural motions in a
single filing.  Because the substantive portion of the Plaintiff's motion is opposed, the Court is
unable to act promptly on the unopposed portion of the motion.

## BACKGROUND

The substantive and procedural findings of fact in the Opinion **(# 295)** previously issued by the Court are deemed incorporated herein.  In summary, the Court found that the Defendants violated the Plaintiff's First Amendment and Equal Protection rights with regard to the diet supplied to him by the Colorado Department of Corrections ("CDOC"); that the Defendants did not violate the Plaintiff's First Amendment or Equal Protection rights with regard to the religious education classes made available at the Arkansas Valley Correctional Facility ("AVCF"); and that the Defendants violated the Plaintiff's First Amendment rights with regard to CDOC's policies regarding religious headgear.  *See Docket* # 295.

Following entry of Judgment **(# 296)**, the Plaintiff moved the Court to modify its findings and amend the Judgment pursuant to Fed. R. Civ. P.  52(b) and 59(e).  Specifically, the Plaintiff requested that the Court reconsider its finding in favor of the Defendants regarding the religious education claim, insofar as shortly after the trial, the Defendants ceased permitting Mark Favors to conduct religious education classes at AVCF.  The Plaintiff points out that the fact that Mr. Favors was currently conducting classes was an essential part of the Court's reason for finding in favor of the Defendants, and that the change in circumstances following the trial constitutes grounds for the Court to revisit the issue and render a verdict in favor of the Plaintiff.  The Plaintiff also requests that the Court modify its findings supporting injunctive relief to comport with the requirements of 18 U.S.C. § 3626(a)(1)(A), and requests that he be granted an extension of time to file a motion for attorney's fees.  In response, the Defendants contend that Mr. Favors was temporarily barred from further inmate contact for a variety of legitimate and non-discriminatory reasons, and that it has procured the services of at least two other volunteers to

2

oversee Muslim religious classes.  The Defendants do not substantively oppose the Plaintiff's

requests regarding 18 U.S.C. § 3626 or the request for additional time to file a motion for

attorney's fees.

Simultaneously, the Defendants move, pursuant to Rule 59(e), to alter that portion of the

judgment relating to the Plaintiff's claim that CDOC's policies on religious headgear violated his

First Amendment rights.  The Defendants contend that the evidence at trial established that the

Defendants demonstrated that CDOC's policies were the least restrictive means necessary to

achieve the compelling governmental interest of prison security, and thus, the Defendants should

be entitled to judgment with regard to the religious headgear claim.

## ANALYSIS

### A.  The Plaintiff's motion

#### (1)  Reconsideration of religious education claim

Fed. R. Civ. P. 52(b) permits the Court to amend its findings and conclusions within 10

days of entry of judgment.  The rule permits the Court to correct manifest errors of law or fact or,

in some circumstances, to consider newly-discovered evidence.  *See Lyons v. Jefferson Bank &*

*Trust,* 793 F.Supp. 989, 990-91 (D. Colo. 1992), *aff'd in relevant part*, 994 F.2d 716 (10th Cir.

1993).  Fed. R. Civ. P. 59(e) provides for a motion to the Court to alter or amend a judgment

within 10 days of entry.  Like Rule 52(b), Rule 59(e) exists to allow the Court to reconsider its

findings to prevent manifest injustice or to receive newly-discovered evidence.  *See Jennings v.*

*Rivers*, 394 F.3d 850, 854-55 (10th Cir. 2005).

The Plaintiff asks that the Court reconsider its findings with regard to the religious

education classes based on the newly-discovered evidence of CDOC's actions against Mr. Favors

3

and the attendant cessation of Muslim education classes.  In seeking relief based on newly-discovered evidence, the party must show that the evidence is newly-discovered and, if the evidence was available at the time of the decision sought to be reconsidered, that counsel made a diligent effort to discover and produce it. *Comm. for the First Amendment v. Campbell*, 962 F.2d 1517, 1523 (10th Cir.1992);[2] *see also Lyons*, 994 F.2d at 727 (on Rule 60(b) motion based on newly-discovered evidence, party seeking relief must show: (i) that the evidence was discovered since the trial; (ii) that counsel was diligent in discovering the evidence; (iii) that the evidence was not cumulative or impeaching; (iv) that the evidence was material; and (v) that, if received at trial, the evidence might have yielded a different result).

This Court is not inclined to grant the Plaintiff's requested relief for several reasons.  First, the Court finds that the Plaintiff was not diligent in bringing the new evidence before the Court.  The bench trial in this matter concluded on March 28, 2005 **(# 281)**, and the Court gave the parties until April 27, 2005 **(# 289)** to file written closing briefs.  The Court then considered the matter and issued its Opinion on July 25, 2005.  According to Mr. Favors' declaration,[3] he was formally notified on April 20, 2005 that he had been suspended by CDOC.  However, the Plaintiff's counsel did not seek to reopen the trial, supplement the record, or otherwise notify the

---

[2]*Campbell* cites *Chery v. Bowman*, 901 F.2d 1053, 1057-58 n. 6 (11th Cir.1990) for this proposition.  However, in *Chery*, the test was stated in the disjunctive, apparently permitting reconsideration where either the evidence was indeed newly-discovered or where, despite reasonable diligence, counsel failed to produce existing evidence.  In *Campbell*, the 10th Circuit– presumably purposefully– replaced the disjunctive "or" with "and."

[3]The Plaintiff has filed an unopposed motion **(# 310)** to substitute a signed supplemental declaration by Mr. Favors for the unsigned copy attached to the Plaintiff's reply to the Motion to Amend Judgment.  There being no opposition, that motion is granted, and the Court considers the signed supplemental declaration.

Court of Mr. Favors' suspension until after the Court issued its findings, more than three months later. Thus, the Plaintiff did not diligently bring this information to the attention of the Court promptly upon its discovery,[4] but instead, waited until the Court had ruled in favor of the Defendants on the religious education classes claim. *See e.g. Graham by Graham v. Wyeth Laboratories,* 906 F.2d 1399, 1417 n. 27 (10th Cir. 1990) (purpose of diligence requirement is "to insure that litigants do not 'hold back' evidence so as to be granted a new trial if the first trial is lost.").

Second, the issue appears to be moot. The Plaintiff's motion includes a declaration by the Plaintiff's counsel, dated August 7, 2005, stating that, following discussions with CDOC's counsel, CDOC had "finally decided to reinstate [Mr. Favors] as a Muslim volunteer." In his reply brief, the Plaintiff appears to acknowledge that Mr. Favors' suspension had, in fact, been lifted. *See Docket* # 309 at 6. Accordingly, it appears that the factual basis for the Court's ruling, albeit temporarily disrupted, remains as originally found by the Court, and thus, there is no need to modify the Court's Opinion or Judgment.

Third, even assuming that Mr. Favors' suspension remained in effect, or that CDOC placed ongoing restrictions of Mr. Favors that prevented him from continuing to conduct classes in the manner previously considered by the Court, the Court would nevertheless decline to exercise its discretion to alter or amend the Judgment. The Court's findings did not depend on whether Mr. Favors, in particular, conducted the classes, but rather, whether the Plaintiff had

---

[4]The record does not reflect when Mr. Favors informed the Plaintiff's counsel of the suspension. The Court might consider the Plaintiff to have exercised appropriate diligence if, for some reason, Mr. Favors neglected to advise the Plaintiff's counsel of the situation until late July or August 2005, but the record contains no evidence that this was the case.

5

access to religious education classes on at least a monthly basis.  Although there may be some

question as to whether the circumstances giving rise to Mr. Favors' suspension were truly

legitimate and non-discriminatory, this is an issue that is collateral to the question of whether the

Plaintiff's constitutional rights are being properly afforded.  The Court's rulings on the substantive

legal issue are abundantly clear.  The religious education classes described at trial are a protected

exercise of religion under RLUIPA.  Providing such classes on at least a monthly basis is sufficient

to avoid substantially burdening the Plaintiff's Free Exercise rights.  CDOC has the obligation to

ensure that such classes are made available by supplying CDOC employees or seeking out

sufficient qualified community volunteers to supervise the classes.  So long as CDOC's actions

are in conformity with these obligations, the Plaintiff's constitutional rights are protected,

regardless of whether Mr. Favors is conducting the classes or not.[5]

For these reasons, the Plaintiff's request that the Court modify its Order and Judgment

with regard to his claims concerning religious education classes is denied.

The Court would be remiss, however, to let this issue pass without an observation as to

the nature and timing of CDOC's actions.  The Court has previously observed that CDOC elected

to make specialized religious meals available to inmates only when faced with an imminent or

actual court order, and that Ms. Sanguinetti's increased efforts to recruit Muslim volunteers to

conduct religious education classes corresponded closely to the scheduled trial in this matter.

---

[5]The Court does not pass on the question of whether Mr. Favors (or indeed, the Plaintiff) has standing to maintain a new cause of action under the circumstances posed in the initial motion papers, nor whether such claims might have merit.  For example, Mr. Favors may have a viable claim under 42 U.S.C. § 1983, based on alleged retaliation against him for exercising his First Amendment rights.  Assuming that CDOC continued to bar Mr. Favors and failed to make reasonable efforts to recruit new Muslim volunteers to conduct religious classes, the Plaintiff might also be able to commence a new action seeking appropriate relief.

These observations reflect the Court's concerns over what appears to be an unwillingness by CDOC to assure that all inmates are afforded their full Free Exercise rights.  Indeed, this Court was particularly troubled that laudable efforts by Mr. Gasko to create a robust and flexible policy to allow religious exercise, with an intended benefit of improved inmate discipline and rehabilitation, has subsequently been applied by CDOC officials as narrowly as possible. It appears that CDOC, rather than affirmatively recognizing its obligations under the First Amendment and proactively resolving claims by inmates, instead routinely chooses to engage in prolonged, expensive litigation, only to surrender untenable positions at the last possible opportunity. The actions with regard to Mr. Favors appear to be a further example of these practices - the validity of the justifications given for Mr. Favors' suspension are debatable,[6]  and CDOC rescinded its actions only after being advised that the Plaintiff's counsel brought the matter before the Court.[7]   Although CDOC alleges that it has sought to obtain other Muslim volunteers, it would appear that the only two individuals located were somehow affiliated with Mr. Favors,

---

[6]The Defendants' brief recites the following transgressions committed by Mr. Favors: (i) various concerns resulting in the initial denial of his volunteer application in 2003, although such concerns were apparently abated, resulting in the acceptance of his application in 2004; (ii) allegedly disruptive visits with an inmate in August and October 2004; (iii) tardiness, rudeness to a corrections officer, and inappropriate conduct during a visit in November 2004; (iv) an event during the trial in this case on March 23, 2005, in which Mr. Favors passed a note to the Plaintiff's counsel, thereby allegedly violating an administrative regulation prohibiting staff from "giv[ing] rise to direct, indirect, or perceived conflicts of interest"; and (v) an incident on March 25, 2005, in which Mr. Favors was late for a scheduled visit and was rude to corrections staff. *Docket* # 304 at 4-8.  Curiously, most of these actions were committed long before trial in this case, yet did not result in the suspension of Mr. Favors.  It was only after his testimony at trial that conduct similar to that which had gone unpunished before– compare the events of November 2004 to those of March 25, 2005– resulted in swift and certain discipline.

[7]The Defendants do not explain why they chose to rescind the suspension, much less explain the curious timing of the decision.

7

despite Ms. Sanguinetti's testimony as to her numerous outreach efforts towards the broad

Muslim community.  These actions appear to continue what would appear to be a hard-nosed,

adversarial approach by CDOC with regard to religious exercise by some or all inmates.  This

approach has, historically and presently, resulted in extensive, expensive litigation repeatedly

resulting in court judgments against CDOC that likely could have been avoided.  In light of

CDOC's arguments of limited public resources and the need for prison security, the Court

recommends reassessment of the wisdom and efficacy of this practice by CDOC, their counsel,

and the people of the State of Colorado.

    (2) <u>Amendment of findings to comport with 18 U.S.C. § 3626</u>

    The Plaintiff requests that the Court modify its findings to comport with the requirements

of 18 U.S.C. § 3626(a)(1)(A).  That statute provides that:

> Prospective relief in any civil action with respect to
> prison conditions shall extend no further than
> necessary to correct the violation of the Federal
> right of a particular plaintiff or plaintiffs.  The Court
> shall not grant or approve any prospective relief
> unless the court finds that such relief is narrowly
> drawn, extends no further than necessary to correct
> the violation of the Federal right, and is the least
> intrusive means necessary to correct the violation of
> the Federal right.  The court shall give substantial
> weight to any adverse impact on public safety or the
> operation of a criminal justice system cause by the
> relief.

This statute requires that prospective relief granted by the Court relate solely to the Plaintiff,

*Lindell v. Frank*, 377 F.3d 655, 660 (7th Cir. 2004); that it "heel close to the identified violation,"

and that it "not require for its enforcement the continuous supervision by the federal court over

the conduct of state officers," and that it "avoid unnecessary disruption to the state agency's

normal course of proceeding." *Clement v. California Dept. of Corrections*, 364 F.3d 1148, 1153 (9th Cir. 2004) (internal quotes and editing omitted).  It is not clear whether the 10th Circuit case authority requires the Court to specifically address the § 3623(a)(1)(A) factors as such, or whether other language in the opinion is sufficient to do so.  *See e.g. Alloway v. Hodge*, 72 Fed.Appx. 812, 816 (10th Cir. 2003) (unpublished)[8]  ("we note that the fundamental purpose of [the statute] is to ensure that prospective relief, in fact, is narrowly drawn, extends no further than necessary, and is the least intrusive means necessary to correct the harm, not merely to ensure that the district court uses these particular words to justify an otherwise untenable injunction. . . . While later review of the substance of the order may reveal that the prospective relief, in fact, [complies with the factors], the relevant statutory passages reveal that it was Congress's intent that a district court make these findings explicit to demonstrate that the court considered the appropriate factors in a timely manner.")

The Court believes that its findings in the Opinion sufficiently consider the factors in §3626(a)(1)(A).  However, to the extent that greater specificty is required, the Court supplements the prior Opinion as follows.   With regard to the religious diet claim, the Court directs CDOC to "make the kosher meal available to Mr. Vashone-Caruso."  This relief is specific to the Plaintiff, only.  It is as narrowly drawn as possible.  It heels closely to the identified violation, namely, CDOC's failure to make a religiously-acceptable meal available to the Plaintiff, and it does not require to Court to continue to supervise state officials.  There is no evidence in the record to

---

[8]Pursuant to 10th Cir. R. 36.3(a), the Court does not cite *Alloway* for any precedential value.  Rather, the decision is cited because no published opinion from the 10th Circuit indicates whether express reference to the § 3626(a)(1)(A) factors is required or whether the relevant findings may be made indirectly.  Pursuant to Rule 36.3(c), a copy of *Alloway* is attached to this opinion.

suggest that some less intrusive means to correct the violation is available. The Court rejects the Defendants' argument that a vegetarian meal is sufficient to permit the Plaintiff to exercise his religious practice in consuming *halal* or kosher red meat and that it impermissibly distinguishes between Plaintiff, as a Muslim, and Jews who receive kosher meals. Accordingly, the Court's remedy with regard to the religious diet claim is based on consideration of all of the §3626(a)(1)(A) factors.

With regard to the headgear claim, the Court's directive was less specific. Mindful of CDOC's role in fashioning prison policies, the Court declined to impose any particularized remedy. The Court merely found  "that [CDOC's regulation], as applied to the circumstances described here, violates Mr. Vashone-Caruso's First Amendment rights, and will enjoin the Defendants to cease such violation.  How the Defendants choose to carry out the Court's instruction to cease the violation is a matter left to their sound discretion, subject only to the limitation that it must give effect to Mr. Vashone-Caruso's constitutionally-protected rights." As with the religious diet remedy, this directive applied specifically to the violation of the Plaintiff's rights, rather than the rights of Muslims as a class, or indeed, the rights of all inmates; it heels closely to the nature of the violation, and it does not unduly intrude on CDOC's discretion any more than necessary.  Indeed, the remedy affords CDOC nearly unlimited discretion in how to carry it out.  Although an argument could be made that the remedy is not narrowly tailored, insofar as it does not direct specific headgear that CDOC should authorize, this does not require the Court to continue to monitor CDOC's actions.[9]  The Court does not intend to continue

---

[9]Such an argument would highlight an apparent paradox between the "narrowly drawn" and "least intrusive means" factors of § 3626. The more narrow the remedy, the more it necessarily intrudes on the state officials' ability to exercise their discretion, and *vice-versa*.

supervision of this determination having made specific findings as to the matters CDOC should

consider: (i) the wearing of a head covering at all times is a protected religious exercise and this

headcovering should have no brim at prayer times; (ii) CDOC has a compelling interest in

ensuring that such head coverings are not distinctive; and (iii) CDOC has not shown that requiring

inmates to properly wear baseball caps is the least restrictive means of ensuring the compelling

interest of inmate security.  Thus any policy that permits the Plaintiff to wear a state-issued head

covering, that is or can be made brimless during prayer times, on a  year-round basis complies

with the Court's order.  Although this directive vests considerable discretion in CDOC, it is

sufficiently narrow in its particulars to comply with § 3626(a)(1)(A).

   (3)  Extension of time to move for attorney's fees

   Finally, the Plaintiff moves for an extension of time to file a motion for attorney's fees.

The Defendants do not oppose the request.  The motion is granted, and the Plaintiff shall file a

motion for fees, if at all, within 14 days of the date of this Order.  To encourage resolution of  any

fee claim and thereby avoid prolonging this already protracted litigation, the Court directs that

counsel for both sides confer, in person, before the filing of the application.

**B.  The Defendants' motion**

   The Defendants contend that the Court should deem them to be prevailing parties on the

religious headgear claim.  They contend that the Court found that "there was no testimony elicited

about whether inmates can wear the baseball caps backwards in certain circumstances" and that

"[t]hus, the Defendants demonstrate that the policy which limits inmates to CDOC issued head

coverings is the least restrictive means."  *Docket* # 298 at 3-4.

11

Only a strained reading of the Court's Opinion could yield a conclusion that the Defendants prevailed on the religious headgear claim.  As discussed, there are four elements to the claim: (i) the Plaintiff must prove that the request involves the exercise of religion; (ii) the Plaintiff must prove that that exercise is substantially burdened by the Defendants' policies; (iii) the Defendants must prove that the policies serve compelling interests; and (iv) the Defendants must prove that their policies are the least-restrictive means of achieving those interests.  *Docket #* 295 at 20, 35-40.  The Court found that the Plaintiff proved both of his elements, and that the Defendants proved the existence of a compelling interest, but that the Defendants failed to prove that their current policy is the least-restrictive means of achieving the goal of prison security.  Because the Defendants failed to carry their burden, the Plaintiff prevailed on the claim.  *Id.* at 39-40.

The Defendants appear to argue that the Plaintiff's claim was limited to consideration of whether he could wear a *kufi*, and that CDOC's baseball and stocking caps are less-restrictive means to permit the Plaintiff to fulfill his religious duty to cover his head.  Such an argument ignores the Plaintiff's testimony that, to properly observe his religion, his head covering must allow him to pray appropriately, and that a brimmed cap interferes with his ability to touch his head to the ground during prayer.  Thus, substituting baseball caps for a *kufi* is not the least-restrictive means to assure prison security, as baseball caps needlessly restrict the Plaintiff's ability to practice his religion.  To the extent the Defendant argues that there was no proof in the record that the Plaintiff could not turn his cap backwards during prayer, this lack of evidence is chargeable to the party with the burden of proof on the issue of least-restrictive means– namely, the Defendants.  Had the Defendants adduced sufficient evidence that CDOC's policies regarding

state-issued head coverings would allow the Plaintiff to cover his head year-round, and would not interfere with his ability to pray, a ruling for the Defendants would have been appropriate. Because the record does not clearly contain such evidence, the Court properly entered judgment for the Plaintiff on this claim.

Accordingly, the Defendants' Motion to Alter Judgment is denied.

## CONCLUSION

For the foregoing reasons, the Plaintiff's Motion to Alter Judgment and Motion to Extend Time to File Motion for Attorney's Fees and Costs **(# 297)** is **GRANTED IN PART**, insofar as the Court deems its July 29 2005 Opinion **(# 295)** amended, to the extent necessary, to expressly address the 18 U.S.C. § 3626(a)(1)(A) factors as discussed herein, and insofar as the Plaintiff is granted leave to file a motion for attorney's fees within 14 days of the date of this Order, and **DENIED IN PART**, insofar as the Court declines to alter or amend the Judgment regarding the religious education classes claim.  The Defendants' Motion to Alter Judgment **(# 298)** is **DENIED**.  The Plaintiff's Unopposed Motion to Submit a Supplemental Declaration **(# 310)** in Support of his Motion to Alter Judgment is **GRANTED**.

Dated this 18th day of October, 2005

BY THE COURT:

_Marcia S. Krieger_
_____

Marcia S. Krieger
United States District Judge

*Westlaw.*

72 Fed.Appx. 812
72 Fed.Appx. 812
**(Cite as: 72 Fed.Appx. 812)**

This case was not selected for publication in
the Federal Reporter.

Please use FIND to look at the applicable
circuit court rule before citing this opinion.
Tenth Circuit Rule 36.3. (FIND CTA10 Rule
36.3.)

United States Court of Appeals,
Tenth Circuit.
Arthur Johnel ALLOWAY,
Plaintiff-Appellee,
v.
Dr. Tommy HODGE;  Dr. Jeffrey Trout;
Dr. Joann Ryan;  Judy Waken, Defendants-
Appellants.
**No. 02-7104.**

Aug. 13, 2003.

State prisoner brought § 1983 action against
prison physicians and others, seeking relief for
alleged denial of prescribed medical treatment
for his diagnosed liver disease. The District
Court granted injunction in favor of prisoner,
requiring physicians to continue to administer
his prescribed medical treatment until
resolution of action. Defendants moved to
terminate the injunction, pursuant to the Prison
Litigation Reform Act (PLRA). The United
States District Court for the Eastern District of
Oklahoma denied motion. Defendants
appealed. The Court of Appeals, Brorby,

Senior Circuit Judge, held that: (1) initial
preliminary injunction automatically terminated
90 days after its issuance, but (2) prisoner
effectively renewed his motion for preliminary
injunction at hearing on defendant's motion to
terminate injunction.

 Affirmed.

West Headnotes

**[1] Injunction ☞178**
212k178 Most Cited Cases
Preliminary injunction requiring physicians to
continue to administer state prisoner's
prescribed medications for his diagnosed liver
disease expired automatically 90 days after it
issuance, pursuant to the Prison Litigation
Reform Act (PLRA), even though order
granting injunction stated that injunction
would remain in force until further order of
court, where order failed to contain explicit
findings that injunctive relief was necessary
beyond 90-day period to correct ongoing
violation of federal right, that relief extended
no further than necessary, and that relief was
narrowly drawn and the least intrusive means
to correct violation.  18 U.S.C.A. §
3626(a)(2), (b)(2).

**[2] Motions ☞42**
267k42 Most Cited Cases
State prisoner effectively renewed his motion
for preliminary injunction, requiring physicians
to continue to administer prisoner's prescribed
medications for his diagnosed liver disease, by

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

72 Fed.Appx. 812
72 Fed.Appx. 812
**(Cite as: 72 Fed.Appx. 812)**

arguing the merits of continuing the prospective relief at the hearing on defendants' motion to terminate the injunction, on grounds that motion automatically terminated due to district court's failure to make findings in injunction order, as required by Prison Litigation Reform Act (PLRA); following hearing on defendants' motion, district court made required findings under PLRA to support continuance of injunction. 18 U.S.C.A. § 3626(a)(2), (b)(2).

**\*812** Jack Austin Mattingly, Seminole, OK, for Plaintiff-Appellee.

Angela K. Berglan, Oklahoma City, OK, for Defendants-Appellants.

Before TACHA, Chief Judge, BRORBY, Senior Circuit Judge, and HARTZ, Circuit Judge.

**\*813 ORDER AND JUDGMENT** [FN*]

> FN* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

BRORBY, Senior Circuit Judge.

After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R.App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Defendants in this case appeal from the district court's order denying their motion to terminate an injunction entered under the Prison Litigation Reform Act (PLRA). The injunction requires defendants to continue to administer plaintiff Arthur Alloway's prescribed medical treatment until final resolution of Alloway's action filed pursuant to 42 U.S.C. § 1983. Our jurisdiction arises under 28 U.S.C. § 1292(a)(1), and we affirm.

**I.**

Alloway, an Oklahoma state prisoner, filed his § 1983 complaint seeking relief for the alleged denial of prescribed medical treatment for his diagnosed liver disease. The facts leading up to the district court's issuance of injunctive relief are well known to the parties and recounted in detail in the court's September 21, 2001 order. In that order, the district court denied Alloway's request for examinations by two particular private physicians, as well as his request for a resumption of Actigall, a medication used to dissolve certain types of gallstones. Nevertheless, the court granted Alloway's request for resumption of his prescribed treatment of Oxycontin (a narcotic), milk thistle, and vitamin C, finding that Alloway had shown a substantial likelihood of success on his claim that defendants acted deliberately indifferent by discontinuing that treatment. The court stated:

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

72 Fed.Appx. 812
72 Fed.Appx. 812
**(Cite as: 72 Fed.Appx. 812)**

[W]ith respect to the requested treatments in the forms of Oxycontin, Milk Thistle, and Vitamin C, the court finds plaintiff has met his burden for the issuance of a preliminary injunction.  The evidence demonstrates that, in violation of *Estelle* [*v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) ], he was not allowed to continue with his prescribed treatment after transferring to his current facility, so there is a substantial likelihood of success on the merits of this claim.  There is no dispute that plaintiff suffers from serious liver disease;  the only question concerns the proper treatment. Plaintiff has been examined by Dr. Marlene Bynum and Dr. Barseloux at Griffin Memorial Hospital, and both recommended Oxycontin, Milk Thistle, and Vitamin C. Dr. Yarborough, the pain specialist, as would be expected, only made recommendations for plaintiff's pain management.  Dr. Trout[ ] and Dr. Ryan apparently disagree with the private physicians, but they have failed to articulate the medical rationale for their denial of these treatments which were allowed at a previous DOC facility.

Aplt.App. at 130.  The district court then made specific findings concerning the remaining requirements for a preliminary injunction, stating that plaintiff will suffer irreparable harm if he is not allowed to continue the prescribed treatments and that the injunction will not cause damage to defendants or be adverse to the public interest.  The court concluded "[t]his temporary injunction is effective immediately **\*814** and shall remain in force until further order of the court."  *Id.* at 131.

Defendants did not appeal the court's September 21, 2001 order.  Instead, on October 19, 2001, defendants filed their motion to terminate the injunction pursuant to the PLRA.  In that motion, defendants argued that the district court failed to make the additional findings mandated by the PLRA and codified at 18 U.S.C. § 3626, that the injunction is narrowly drawn, extends no further than necessary, and is the least intrusive means necessary to correct the violation of the federal right.  18 U.S.C. § 3626(a)(1).  Defendants also argued that, because the record presented only a difference of opinion between Alloway's doctors, "there has been no finding that any of Plaintiff's Federal rights were violated."  Aplt.App. at 132.

At a hearing on May 23, 2002, defendants added that the district court's failure to make the required findings under § 3626(a)(1), and its failure to make the order "final" pursuant to § 3626(a)(2), resulted in the automatic termination of the injunction after ninety days. Defendants argued that the statement in the court's order that the injunction "shall remain in force until further order of the court" contradicted § 3626(a)(2)'s automatic expiration provision, but that, even if the court were to make the required findings after-the-fact, defendants would present evidence demonstrating that those findings could not be made.  There was some confusion over the scope of the hearing, as Alloway's counsel objected to the presentation of medical evidence going to the issue of deliberate indifference, an issue which had been

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

72 Fed.Appx. 812
72 Fed.Appx. 812
**(Cite as: 72 Fed.Appx. 812)**

previously briefed and litigated. The magistrate judge ruled that defendants could present their evidence but limited it to issues arising after the preliminary injunction was granted on September 21, 2001. The magistrate judge stated:

> [T]he appropriate issue is whether or not the defendant or the plaintiff's condition has changed since the last hearing. I think I will allow you to call your witness to testify with regard to whether or not the--the administration of these drugs poses a danger to him at the present point because of a change in his condition. I'm not going to allow a revisiting about whether or not this was the right medical treatment to be ordered in the injunction of September of 2001.

Aplt.App. at 146-47. The magistrate judge further ruled that defendants could present evidence showing the risk or harm to the prison system by providing Alloway's treatment.

In her findings and recommendation dated May 30, 2002, the magistrate judge recommended denying defendants' motion to terminate the injunction. As to defendants' claim that there had been no finding that any of Alloway's federal rights were violated, the magistrate judge reviewed the relevant evidence, including defendants' evidence going to any adverse impact of Alloway's treatment on the operation of the prison, and stated:

> [T]he court's order granting the injunction expressly made a finding that the defendants were deliberately indifferent to plaintiff's serious medical needs. The issue is not simply a difference of opinion; instead, it concerns whether plaintiff's established treatment could be summarily halted without medical justification. Throughout this litigation, the defendants have failed to offer a medical rationale for discontinuing plaintiff's treatments, but there has been ample evidence that the recommended treatments were appropriate and helpful.
> *Id.* at 225 (citation omitted).

As to defendants' claim that the order granting the preliminary injunction did not **\*815** make the PLRA's required findings, the magistrate judge stated that "while the statute was not quoted in the order, the substance of the order included the requisite findings." *Id.* Accordingly, the magistrate judge concluded that "the injunction did not automatically terminate after 90 days." *Id.* at 226. The magistrate judge also made findings pursuant to 18 U.S.C. § 3626(b)(3), which provides that ongoing prospective relief shall not terminate if the court makes written findings that the relief remains necessary to correct an ongoing violation of a federal right, extends no further than necessary, and that the prospective relief is narrowly drawn and the least intrusive means to correct the violation.

After reviewing defendants' objections, the district court adopted the magistrate judge's recommendation to deny defendants' motion. In its order, the court also made findings pursuant to the PLRA "that its September 21, 2001, issuance of the preliminary injunction requiring the treatment of Plaintiff with Oxycontin, Vitamin C, and Milk Thistle

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

72 Fed.Appx. 812
72 Fed.Appx. 812
**(Cite as: 72 Fed.Appx. 812)**

extends no further than is necessary to correct the violation of Plaintiff's constitutional right to adequate medical care, it is narrowly drawn, and it is the least intrusive means to correct the violation." Aplt.App. at 245-46 (citing § 3626(a)(1)). The court also concluded that it complied with § 3626(a)(2)'s mandate to make the order "final" during the ninety-day period, stating "that while no subsequent order has contained language making the September 21, 2001, preliminary injunction 'final' before the expiration of the 90-day period, the September 21, 2001, order itself contains functionally equivalent language mandating that the preliminary injunction 'shall remain in force until further order of the court.' " *Id.* at 246.

On appeal, defendants argue that the district court did not comply with the PLRA, and that the preliminary injunction expired on or about December 20, 2001, placing the burden on Alloway to continue to prove that injunctive relief was still necessary. According to defendants, the district court's later findings were impermissible retroactive attempts to comply with the statute. Defendants also argue that, for several reasons, the district court erred when it refused to terminate the preliminary injunction. "The scope of appellate review of a district court's discretionary grant of a preliminary injunction is narrow. Unless the district court abuses its discretion, commits an error of law, or is clearly erroneous in its preliminary factual findings, the appellate court may not set aside the injunction." *Hartford House, Ltd. v. Hallmark Cards, Inc.,* 846 F.2d 1268, 1270 (10th Cir.1988).

## II.

Clearly, the PLRA requires that district courts issuing prospective relief in cases involving prison conditions make certain findings in order for that relief to conform to the law. Section 3626(a)(1) states:

Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal rights, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

**\*816** 18 U.S.C. § 3626(a)(1). Section § 3626(a)(2), which specifically addresses preliminary injunctive relief, essentially repeats the mandate, stating that

[p]reliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system....

18 U.S.C. § 3626(a)(2). That section, however, adds the following language: "Preliminary injunctive relief shall

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

72 Fed.Appx. 812
72 Fed.Appx. 812
**(Cite as: 72 Fed.Appx. 812)**

automatically expire on the date that is 90 days after its entry, unless the court makes the findings required under subsection (a)(1) for the entry of prospective relief and makes the order final before the expiration of the 90-day period." *Id.* Section 3626(b)(2) provides that defendants are entitled to immediate termination of prospective relief granted without the required findings, subject to the following limitation in subsection (3):

Prospective relief shall not terminate if the court makes written findings based on the record that prospective relief remains necessary to correct a current and ongoing violation of the Federal right, extends no further than necessary to correct the violation of the Federal right, and that the prospective relief is narrowly drawn and the least intrusive means to correct the violation. 18 U.S.C. § 3626(b)(3). Section 3626(e)(1) requires courts to rule promptly on motions to terminate prospective relief, a requirement bolstered by § 3626(e)(2), which provides for an automatic stay of prospective relief after limited periods of time if the court has not ruled on the motion. The stay is mandatory, and the district court may not use its equitable power to enjoin it. *Miller v. French,* 530 U.S. 327, 340, 120 S.Ct. 2246, 147 L.Ed.2d 326 (2000).

Defendants' argument that the preliminary injunction automatically expired after ninety days requires this court to review the sufficiency of the district court's findings under the PLRA. In doing so, we note that the fundamental purpose of the PLRA sections relevant to this case is to ensure that prospective relief, in fact, is narrowly drawn, extends no further than necessary, and is the least intrusive means necessary to correct the harm, not merely to ensure that the district court uses these particular words to justify an otherwise untenable injunction. Nevertheless, the statute is clear that, unless a district court "makes the findings required under subsection (a)(1) for the entry of prospective relief and makes the order final before the expiration of the 90-day period," a preliminary injunction automatically expires. 18 U.S.C. § 3626(a)(2). The specific reference to the required findings in this section, along with § 3626(b)(2)'s mandate of immediate termination of prospective relief granted in the absence of those findings, emphasizes the need for a district court to sufficiently articulate the additional findings with some specificity so that there is no doubt that the court considered the relevant factors in granting a preliminary injunction. While later review of the substance of the order may reveal that the prospective relief, in fact, is narrowly drawn, extends no further than necessary to correct the violation, and is the least intrusive means necessary to correct that violation, the relevant statutory passages reveal that it was Congress's intent that a district court make these findings explicit to demonstrate that the court considered the appropriate factors in a timely manner.

[1] The district court in the present case discussed the traditional factors used **\*817** for evaluating motions for preliminary injunction and made specific findings regarding those factors, but it made no specific findings

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

72 Fed.Appx. 812
72 Fed.Appx. 812
**(Cite as: 72 Fed.Appx. 812)**

concerning the additional requirements found in § 3626 of the PLRA. Because it lacks an explicit reference to the statutory findings, or any other language which could reasonably be said to address those findings, the order leaves us to doubt whether the district court considered any of the PLRA's additional factors when crafting the preliminary injunction. Accordingly, because the order granting the preliminary injunction did not contain the particular findings required by § 3626, that injunction expired automatically after ninety days.

## III.

[2] This court is thus left with the question of what significance, if any, the hearing and the additional findings made by the magistrate judge and district court had on this proceeding. The implication of defendants' argument on appeal is that we should ignore these later events, forcing Alloway to file a new motion for preliminary injunction. We refuse to do so, however, as we conclude that Alloway effectively renewed his motion by arguing the merits of continuing the prospective relief at the hearing on defendants' motion to terminate the injunction. Because defendants did not appeal the preliminary injunction, the magistrate judge limited defendants' evidence at the hearing to changes in the parties' conditions after September 21, 2001. Even if the magistrate judge erred in restricting the scope of evidence to be admitted, defendants have failed to demonstrate any prejudice from the restriction. The magistrate judge otherwise gave defendants latitude in presenting evidence, and

after reviewing all the evidence, the magistrate judge concluded that preliminary prospective relief for Alloway should continue. Subsequently, the magistrate judge and the district court judge each made findings that were sufficiently articulated to demonstrate that the court considered the relevant factors under the PLRA. Thus, although the original preliminary injunction had technically expired on or about December 20, 2001, the district court effectively entered a new injunction, fully compliant with the PLRA, on July 18, 2002. "Nothing in the [PLRA] limits the number of times a court may enter preliminary relief." *Mayweathers v. Newland,* 258 F.3d 930, 936 (9th Cir.2001). The magistrate judge's conclusion that "the substance of the [September 21, 2001] order included the requisite findings," Aplt.App. at 225, was in error. Nevertheless, because we conclude that defendants have not sufficiently demonstrated prejudice, and in light of the court's hearing and subsequent findings, that error is harmless.

## IV.

Defendants also argue that the injunction itself demonstrates an abuse of discretion. Defendants point to some additional items of evidence that "make it imperative that the Preliminary Injunction be terminated, both for the safety of the Plaintiff and the entire corrections system." Aplt. Br. at 14. This new evidence was presented to the magistrate judge, who nonetheless recommended that the injunction continue. "Under the abuse of discretion standard[,] a trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

72 Fed.Appx. 812
72 Fed.Appx. 812
**(Cite as: 72 Fed.Appx. 812)**

lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Moothart v. Bell,* 21 F.3d 1499, 1504 (10th Cir.1994) (quotation omitted). Moreover, "[a] district court abuses its discretion when it renders an arbitrary, capricious, whimsical, or manifestly unreasonable judgement." *Coletti *818 v. Cudd Pressure Control,* 165 F.3d 767, 777 (10th Cir.1999) (quotation omitted). After carefully reviewing the record in this case, we see nothing to suggest that the district court acted unreasonably in discounting defendants' newly discovered evidence in this case. The injunction does not prevent the prison from taking appropriate measures to prevent Alloway from abusing the medications, so long as they are not withheld.

  Accordingly, the judgment of the district court is AFFIRMED.

72 Fed.Appx. 812

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.