IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 95–cv–01578-MSK-BNB

RONALD ANTHONY VASHONE CARUSO,

    Plaintiff,
v.

CARLTON ZENON,
KATHERINE SANGUINETTI,
DONA ZAVISLAN, and
A.J. TRUJILLO, in their official capacities,

    Defendants.
_____

**OPINION AND ORDER GRANTING MOTION FOR ATTORNEY'S FEES**
_____

**THIS MATTER** comes before the Court pursuant to the Plaintiff's Motion for Attorney's Fees and Costs **(# 313)**, the Defendants' response **(# 317)**, and the Plaintiff's reply **(#319)**.

Following a two-day bench trial **(# 280, 281)** in March 2005, the Court entered an Opinion **(# 295)** and Judgment **(# 296)**, granting certain forms of injunctive relief to the Plaintiff, and entering judgment in favor of the Defendants on other claims. The Plaintiff then filed the instant motion for attorney's fees, identifying a total of approximately 1,700 hours of time and $216,511.83 in fees expended in the action, and an additional 59 hours and $ 7,393.17 in fees expended preparing the fee application itself, for a total of $ 223,905 in fees. Acknowledging the Plaintiff's partial success, the Plaintiff's counsel voluntarily reduced the total amount of fees by 15%, resulting in a fee request of $ 191,428.20. The Plaintiff also requested $10,483.16 in costs.

1

In response, the Defendants do not dispute the Plaintiff's entitlement to an award of fees, but contend that the Plaintiff's request: (i) is disproportionate to the degree of relief obtained, 42 U.S.C. § 1997(d)(1)(B)(i); (ii) involves an excessive number of claimed hours; (iii) includes inappropriate billing of clerical and travel time; and (iv) should be reduced to reflect the Plaintiff's partial success. The Defendants contend that, in light of these various defects, an appropriate fee award would be $ 124,428.33. In addition, the Defendants contend that, to the extent that the costs sought by the Plaintiff exceed those taxed by the Clerk of the Court on November 9, 2005, those costs should be denied based on the Plaintiff's failure to appeal the Clerk's award.

### A. Standard of review

When considering a claim for attorney's fees under 42 U.S.C. § 1988(b), the moving party bears the burden of proving entitlement to an award, as well as the appropriateness of the hours expended and the hourly rate sought. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Once the Plaintiff carries his burden of establishing an appropriate amount of hours spent[1] and a reasonable fee, those numbers are used to generate a "lodestar" amount. *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998). The lodestar is a presumptively reasonable fee award, taking into account most of the factors that bear on the reasonableness of the award, and thus,

---

[1] There appears to be some confusion among courts as to whether partial success is a factor to be weighed in calculating the reasonable hours number to be used in the lodestar in the first place, *see e.g. Hensley* at 435 ("the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation"), or whether the a reduction should be taken after the lodestar is calculated. *See Nephew v. City of Aurora*, 830 F.2d 1547, 1549 (10th Cir. 1987) ("Once determined, however, the [lodestar] figure can be adjusted upward or downward, according to certain factors, one of the most important of which is the "results obtained"), *but compare Delaware Valley, supra* (adjustments to lodestar will be "rare"). Because the outcome of this question does not materially affect the calculation, the Court will first make a lodestar calculation, then adjust that calculation based on the extent of success.

adjustments to the lodestar should only be made in rare and exceptional cases. *Pennsylvania v. Delaware Valley Citizens Council for Clean Air*, 478 U.S. 546, 564-65 (1986).

Although presented in various ways, the essence of the Defendants' objections to the Plaintiff's request is that: (i) the number of hours requested are unreasonable, and (ii) that the lodestar should be reduced consistent with the extent of the Plaintiff's success.

### B. Calculating the lodestar

The first portion of the lodestar analysis is relatively simple, as the Court need only determine the reasonable number of hours expended in the case, and multiply that by a reasonable hourly rate. The Defendants object only to the reasonableness of the Plaintiff's counsel's claimed hours, alleging that excessive time was spent on certain tasks, and that time spent on clerical tasks is not compensable at all. To a limited extent, the Court agrees with the Defendants that the number of hours expended on certain tasks appears to be excessive. For example, over the span of about three weeks, Plaintiff's counsel spent more than 70 hours preparing for one-day depositions of each of two of the Defendants. Although this figure may or may not be excessive on its own,[2] the thoroughness of the deposition preparation suggests that the 121 hours spent by Plaintiff's counsel drafting a summary judgment response two weeks later may have been excessive. The Court is unprepared to fix specific amounts of time that are acceptable for certain tasks, or to declare authoritatively that certain time entries are excessive while others are not. Similarly, although the Court agrees in part with the Defendants that certain clerical tasks appear

---

[2]Although there can never be hard and fast rules for such things, the Court is aware of a practice among some attorneys who, when attempting to budget the costs of trying a case for a potential client, will use a rule of thumb estimating that each hour of deposition time will require three hours of preparation.

inappropriate for a fee award – for example, time spent conferring with court reporters and time spent "organizing" exhibits after trial – the Court is not inclined to specifically identify which types of clerical work may be compensable, and which may not. Rather, based upon its overall review of the Plaintiff's counsel's billing entries, the Defendants' objections, and its own familiarity with the course of proceedings in this action, the Court finds that a 10% reduction in the overall fees sought by the Plaintiff is sufficient to account for any excessive or inappropriate billings. Applying that 10% reduction to the raw total of $ 223,905[3] in fees sought by the Plaintiff produces a lodestar amount of $ 201,514.45.

### C. Adjustment for mixed success

In *Hensley*, the Supreme Court observed that the extent of the results obtained by the plaintiff was an "important factor" in the fee calculation. 461 U.S. at 424. In situations where a plaintiff achieved less than total success, *Hensley* suggests a two-part inquiry to determine whether to accept the total number of hours worked as reasonable: "First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?" *Id.*

With regard to the first inquiry, work on claims that are inextricably linked or which arise from the same core facts should be compensable even though only some of the legal theories applied to those facts were successful. *Id.* By contrast, where separate claims could logically have been brought as separate lawsuits, it would be inappropriate to award fees on the

---

[3] Because the Court finds that the Plaintiff's 15% reduction for partial success is inadequate, *see infra.*, the Court bases its calculations on the original, unreduced amount of fees billed by the Plaintiff's counsel.

unsuccessful claims. *Id.* With regard to the second inquiry, *Hensley* suggests that "[w]hen a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee," even though some of the theories urged by that plaintiff were rejected. 461 U.S. at 435. By contrast, if the plaintiff "achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Id.* at 436.

The first *Hensley* inquiry is whether the claims the Plaintiff succeeded on are distinct from the claims on which he failed. The answer to this question is an unqualified "yes." The claims involving the diet available to the Plaintiff at the prison, the religious education classes available to him, and the religious headwear he is entitled to possess each entail analysis of the application of distinct prison policies and regulations, different factual scenarios, and different aspects of Muslim religious beliefs. Each of these claims could have been brought as distinct lawsuits, and thus, it would be inappropriate to award fees on the unsuccessful claim – the claim involving religious education classes.

However, determining how to make that reduction is difficult, as the billing records provided by the Plaintiff's counsel are not so granular as to identify what time was spent pursuing what claim. Theoretically, the Court could conclude that because three claims were presented at trial, and the Plaintiff was completely unsuccessful on one of them, a 33% reduction in the lodestar would be appropriate to reflect the time spent on the religious education claim. To do so, however, would ignore that certain issues of fact or law were common to all claims, or that there are economies of scale that occur when discovery and trial address three claims at once instead of in three separate actions. Under these circumstances, the Court finds that a reduction of

the lodestar by 20% is adequate to account for the Plaintiff's unsuccessful religious education claim.

The second *Hensley* inquiry examines whether the results achieved by the Plaintiff on the successful claims are "excellent"– suggesting that the full lodestar be awarded – or are of partial or limited value, warranting an adjustment to (or, indeed, wholesale rejection of) the lodestar amount. Here, the Plaintiff achieved nearly full relief on his diet claim. Although the Plaintiff sought *halal* meals as his primary relief, he has taken the position throughout this litigation that access to a kosher diet would also be satisfactory. The Court's finding that the Plaintiff was entitled to receive kosher meals might not be the full measure of relief that the Plaintiff desired, but it was a sufficient change from the status quo that one could fairly characterize the Plaintiff's nearly complete victory on this claim as "excellent." Accordingly, the Plaintiff's counsel should receive the full value of time reasonably spent in pursuit of this claim.

The degree of success on the headwear claim is less clear. The primary relief sought by the Plaintiff on this claim was the right to wear a *kufi*. In the alternative, the Plaintiff sought access to some other form of distinctive headwear, or, barring that, some form of headwear that allowed him to cover his head year-round and still perform his prayers. The Court found that the Defendants had adequately demonstrated a basis for banning *kufis* and other types of distinctive headgear. The Court further found that the record suggested that the Plaintiff was required to wear a baseball cap during part of the year, and that such a cap, worn properly, would interfere with the Plaintiff's ability to pray. However, given the degree of ambiguity in the record on this last issue (as well as the Court's general interest in deferring to the experience and discretion of prison officials), selection of an appropriate remedy was purposefully left to the Defendants, with

6

the Court suggesting possible alternatives such as allowing the Plaintiff to wear the baseball cap backwards during prayers, or to provide the Plaintiff with some other suitable form of headwear. The record does not reflect what remedy the Defendants chose,[4] but the scope of the remedy granted by the Court was much narrower than the types of relief sought by the Plaintiff. In this regard, although the Plaintiff prevailed on the headwear claim, the results he obtained were significantly short of a full victory. In this circumstance, a full award of the lodestar figure for this claim would be inequitable, and the Court will reduce the lodestar calculation on this portion of the fee request to reflect the incomplete degree of the Plaintiff's success on this claim.

Mindful of the fact that the Plaintiff successfully proved that the prison's headgear policy violated his constitutional rights, the Court must at least award fees for the majority of the time spent pursuing that claim. Nevertheless, the Court observes that the focus of the trial was on the Plaintiff's desire to wear distinctive headgear, not primarily an attempt to obtain some modification of prison policies that would permit him to pray while wearing the state-issued headwear. Had the Plaintiff simply demanded an accommodation that would allow him to pray, it is likely that trial of this claim avoided. Accordingly, the Court finds that reduction of 15% of the fees incurred on the headwear claim would be appropriate to reflect that the Plaintiff succeeded on this claim, but only obtained relief that could likely have been secured through more reasoned negotiation. Using the somewhat simplistic assumption that each claim tried amounts for approximately a third of the total fees incurred by the Plaintiff, a 15% reduction of the fees incurred on the headwear claim amounts to just over a 5% reduction of the Plaintiff's overall fees.

---

[4]The Defendants' brief implies that the Defendants comply with the judgment simply by permitting the Plaintiff to turn the baseball cap backwards when praying.

Accordingly, the Court will thus reduce the lodestar by 5% to account for limited success on the headwear claim.

Plaintiff's counsel also pursued a number of additional claims through discovery before abandoning them prior to trial. At the time Plaintiff's counsel entered this case on July 16, 2004 **(# 213)**, the Plaintiff was asserting 10 separate claims, including claims relating to events occurring during the Ramadan holiday in 1994 and 1995, claims involving access to *halal* items in the prison canteen, the ability to congregate with other inmates for prayer, and permitting non-Muslim inmates to attend Muslim religious services. Plaintiff's counsel sought **(# 218)** and obtained **(# 225)** leave to conduct supplemental discovery on some or all of these claims. The record does not reflect which of these claims were the subject of the additional discovery, but as of January 25, 2005, when the Court denied **(# 250)** the Defendants' summary judgment motion, it is clear that the Plaintiff was still asserting the three claims presented at trial, as well as claims involving the canteen and congregate prayer claims. By the time of the parties' Final Trial Preparation Conference on March 11, 2005 **(# 270)**, the Plaintiff had agreed to drop the canteen and congregate prayer claims. The record does not permit the Court to determine with precision how much time was spent pursuing these claims that were not eventually presented at trial. Absent some evidence that shows that a significant amount of time was spent pursuing these claims in particular, relative to those claims that were presented at trial, the Court is inclined to make only a nominal adjustment to the Plaintiff's counsel's fee request to account for the abandoned claims. The Court finds that an overall 3% reduction in the lodestar figure – representing approximately 30 hours of work – is adequate to exclude time spent conducting discovery and pretrial preparation on claims that were abandoned prior to trial.

Thus, the Court concludes that a reduction of 28% of the lodestar figure adequately reflects the mixed success obtained by the Plaintiff on all of the claims that were asserted in this case. Reducing the $ 201,514.45 lodestar figure by 28% yields a fee award of $ 145,090.40. Based upon the totality of the circumstances in this case, the Court finds that figure to be a reasonable attorney's fee, and awards that amount to the Plaintiff.[5]

**D. Costs**

On November 9, 2005, after the Plaintiff's motion was filed, the Clerk of the Court taxed costs in favor of the Plaintiff in the amount of $ 6,467.27. The costs sought by the Plaintiff in the instant motion duplicates, in many respects, those taxed by the Clerk. To the extent the Plaintiff now seeks costs that were presented in the Bill of Costs and denied by the Clerk, the time for requesting review of the Clerk's taxation has run. To the extent the Plaintiff seeks costs that were not included in the Bill of Costs, the briefing does not adequately delineate which costs are sought here for the first time. Accordingly, the Court declines to award costs in excess of those already taxed by the Clerk.

---

[5]Although *Hensley* requires the reduction of fees made by the Court, that reduction should not be construed as a criticism of the performance of the Plaintiff's counsel in this case. The Court expresses deep gratitude to the Plaintiff's counsel for their willingness to undertake representation of the Plaintiff *pro bono*. Although intending no disrespect of the Plaintiff's *pro se* efforts, the Court notes that the diligent and professional work of Plaintiff's counsel resulted in both favorable results for the Plaintiff and the narrowing and focusing of issues in the trial process.

9

Accordingly, the Plaintiff's Motion for Attorney's Fees and Costs **(# 313)** is **GRANTED**, insofar as the Judgment **(# 296)** is deemed amended to direct the Defendants to pay $ 145,090.40 in attorney fees and the previously taxed $ 6,467.27 in costs to the Plaintiff's counsel.

Dated this 11th day of May, 2006.

                                                 **BY THE COURT:**

*[Signature: Marcia S. Krieger]*

                                                 Marcia S. Krieger
                                                 United States District Judge